[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
(MOTION TO STRIKE) (MOTION FOR SANCTIONS)
The defendants American Lawyer Media, Inc. and its publication,The Connecticut Law Tribune, hereinafter referred to as "American" has filed a Motion to Strike pursuant to ConnecticutPractice Book § 10-39, seeking an Order striking the Second Substituted Complaint filed by the plaintiff. The plaintiff's Complaint seeks a new trial pursuant to Connecticut GeneralStatutes § 52-270. The defendant, American, further requests an entry of a "Final Judgment" seeking a dismissal of this action with prejudice and that the court order sanctions, including a reasonable attorney's fee against the plaintiff, as well as an order enjoining the plaintiff from filing further actions against American without prior permission of the Court.
I. FACTS
In reviewing this motion to strike, and the defendant, American's request for sanctions against the plaintiff, it is incumbent for the court to recite the history of litigation between the parties.
In March 1995, the plaintiff commenced an action against the defendant in the Judicial District of Ansonia/Milford at Milford, titledRichard M. Franchi v. American Lawyer Media, et al, No. CV95 0050279. On March 27, 1997, the case was presented for trial. The plaintiff was represented by legal counsel. After trial was commenced, but prior to its conclusion, the parties reached an agreement. The agreement was recited for the record in open court, and pursuant to the terms of the agreement the court transcript was ordered sealed. Thereafter, the case was dismissed with prejudice by the trial court in accordance with the agreement of the parties on March 27, 1997. CT Page 4582
On July 2, 1997, the plaintiff filed a Motion to Reopen the court's judgment. Said motion was denied July 22, 1997. Proceeding in a pro se capacity, the plaintiff filed a Motion for Reargument on August 4, 1997. That Motion was denied by the court on August 13, 1997. Thereafter, the plaintiff filed an appeal of the August 13, 1997 order denying his Motion for Reargument and, after briefing and oral argument, the Appellate Court summarily affirmed. Franchi v. American Lawyer Media, 51 Conn. App. 903
(1998).
In May 1998, the plaintiff filed, in the prior action, a "Petition for a New Trial." After oral argument on August 17, 1998, the Superior Court denied the petition as procedurally improper, because it had been filed in the prior action and not as a separate action.
Thereafter, the plaintiff commenced the instant action, by filing a "Complaint for Petition of a New Trial", the Complaint being dated August 27, 1998. On March 29, 1999, the court heard argument on the defendant's Motion to Strike Counts One and Two of the plaintiff's Complaint and also heard argument on the defendant's request for sanctions. On April 5, 1999, the court issued an Order, which it clarified, by issuing a further Order on April 20, 1999. The court granted the defendant's Motion to Strike both Counts of the Complaint, but denied any sanctions against the plaintiff.
The plaintiff then filed a Substitute Complaint for Petition for New Trial, dated May 3, 1999 (the "First Substitute Complaint"), alleging fraud. On August 30, 1999, the court heard arguments on the defendant's Motion to Strike the plaintiff's First Substitute Complaint and the defendant's renewed request for sanctions. On September 22, 1999, the court issued an Order granting the defendant's Motion to Strike finding:
 "It is not sufficient to simply plead conclusions as to claims of fraud. It is necessary to set out specific underlying facts to support an allegation of fraud. See Maruca v. Phillips, 139 Conn. 79 (1952).
At the same time, the court also denied an assortment of motions the plaintiff had filed on June 29, 1999 (including a Motion for Articulation, a Motion to Reargue the Court's previous decision and a Motion for Extension of time) The Court, also, once again, denied the defendant's request to impose sanctions CT Page 4583 against the plaintiff.
In response to the court's decision and Orders of September 22, 1999, the plaintiff has filed a Second Substitute Complaint, which is the subject of the instant Motion to Strike, including the defendant's renewed request for sanctions against the plaintiff.
II. Does the Second Substitute Complaint State a Cause of Action?
A motion to strike challenges the legal sufficiency of the allegations of a pleading to state a claim upon which relief can be granted. Practice Book § 10-39. A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings."Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985); see also,Holler v. Buckley Broadcasting Corp. , 47 Conn. App. 764, 768
(1998). The allegations of the Complaint are construed in a manner most favorable to the plaintiff. Mead v. Burns,199 Conn. 651 (1986). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them, and if the facts provable under its allegation would support a defense or a cause of action, the motion to strike must fall. Mingachos v.CBS, Inc., supra, 109. In reviewing a motion to strike the court must accept as true all facts that are well pleaded and construe the complaint in the manner most favorable to sustaining its legal sufficiency. Sassone v. Lepore, 226 Conn. 773, 779-80.
On this motion to strike, the court may take judicial notice of the plaintiff's prior action against the defendant. Presutti v.New Britain, No CV98 0577534, 1998 WL203396 at *1 (Conn.Super. CT. April 16, 1998; State v. Lenihan, 151 Conn. 552, 554 (1964)).
A petition for a new trial is controlled by statute. State v.Grimes, 154 Conn. 314, 324 (1966); Wojculewicz v. State,142 Conn. 676, 677 (1955). Connecticut General Statutes § 52-570, provides:
 "The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or in part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to CT Page 4584 prosecute with reasonable diligence, or for other reasonable cause according to the usual rules in such cases."
This statute is "designed to correct serious miscarriages of justice." Reilly v. State, 32 Conn. Sup. 349, 376-377 (1976). The Supreme Court has stated in State v. Grimes, , supra 325, that:
 "The petitioner has the burden of alleging and proving facts, which would. . . . entitle him to a new trial on the grounds claimed; and the petition is addressed to the legal discretion of the trial court. A petition will never be granted except on substantial grounds. It does not furnish a substitute for, or an alternative to, any ordinary appeal, but applies only when no other remedy is adequate and when in equity and good conscience relief against a judgment should be granted. When the petition is predicated upon newly discovered evidence, that evidence must, in fact, be newly discovered and such that it could not have been discovered and produced at the former trial by the exercise of proper diligence. `The procedure is not intended to reach errors available on appeal of which the party should have been aware at the time when an appeal might have been taken. . . .'".
In the circumstances presented here, where the plaintiff's original complaint against the defendant, American, was dismissed with prejudice, pursuant to a stipulated judgment, the Connecticut General Statutes and Connecticut Practice Book provide the plaintiff with the remedy of a motion to reopen the judgment. Connecticut General Statutes § 52-212 (a); Practice Book § 17-4. Housing Authority v. Lamothe, 225 Conn. 757
(1993); Gillis v. Gillis, 214 Conn. 336, (1990). The plaintiff availed himself of that remedy on July 2, 1997, when he filed a motion to reopen the judgment. That motion was denied on July 22, 1997, and the plaintiff's subsequent Notion to Reargue was denied on August 13, 1997. The plaintiff subsequently appealed and the Appellate Court affirmed the court's judgment on November 18, 1998. Franchi v. American Lawyer Media, 51 Conn. App. 903 (1998).
The Second Substitute Complaint does not allege that the procedure available to the plaintiff, being the Motion to Reopen and the subsequent appellate review, were in any way inadequate. It is extremely doubtful, once the matter has been settled through the appellate procedure, whether the same basic issue can be re-litigated in a proceeding under Connecticut General Statute § 52-570. Testa v. Carrolls Hamburger System, Inc., CT Page 4585154 Conn. 294, 297 (1966); Black v. Universal C.I.T. Credit Corporation,150 Conn. 188 (1962). Because the first action ended in a stipulated judgment of dismissal, not a judgment after a completed trial, it is not all that clear that the remedy of a petition for a new trial under Connecticut General Statute §52-270 is even available to the plaintiff.
In any event, the court agrees with the defendant that the plaintiff's Second Substitute Complaint alleges none of the requirements set forth in Connecticut General Statutes §52-270. The plaintiff alleges no "mispleading". He alleges no "discovery of new evidence". The plaintiff did not lack a full and fair opportunity to prove his case at trial. The plaintiff does not specifically allege fraud in his Second Substitute Complaint.
The plaintiff does allege that he was denied a fair trial because the defendant never disclosed that certain employees of the defendant were physically present at the trial. The plaintiff, in the first action between the parties, served Interrogatories upon the defendant explicitly requesting the names and addresses of each person who wrote an article which appeared in the April 19, 1993 publication of the Connecticut LawTribune, and which mentions the plaintiff. The plaintiff's first action was based upon his allegations that statements made by the plaintiff in said article were libelous. The plaintiff also requested in his Interrogatories that the defendant disclose the names and addresses of each person who edited said article.'
The defendants answered said Interrogatories which disclosed that certain of these individuals resided at specific addresses outside the State of Connecticut. At the commencement of trial these individuals were present in Connecticut and, in fact, appeared at the Superior Court in Derby, Connecticut on March 27, 1997. The plaintiff alleges in his Second Substitute Complaint that the defendant had prior knowledge of these individuals returning to Connecticut and that the defendants failed, under a duty of continuing disclosure, to notify the defendant. Further, the plaintiff claims that this failure of the defendant to continually disclose the locations of these individuals up to, and including, the time of trial, was a misrepresentation of material facts and prevented the plaintiff from securing supporting documents; from serving subpoenas upon key witnesses; from sequestering key witnesses and/or requesting documents concerning the trial. The plaintiff lastly claims that the actions of the defendant, through its agents, servants and/or CT Page 4586 employees are unfair and prevented a fair trial.
The court finds these claims to be baseless. The plaintiff never, through Interrogatories or otherwise, inquired whether the defendant's employees, who resided outside of Connecticut would be witnesses at the trial. The plaintiff never took any steps to depose these individuals. The plaintiff never requested from the defendant that these individuals be present for trial, nor did he state an intention to the defendant that he would call these individuals as witnesses. The plaintiff was aware of the subject individuals being present at the trial on March 27, 1997.
The defendant had no obligation to keep the plaintiff informed of the daily whereabouts of the individuals identified in the response to the Interrogatories. The plaintiff requested their names and addresses, not their travel itineraries. Nor did he ask if they would be witnesses for the defendant. The fact that the authors and editors of the Connecticut Law Tribune article, which was alleged to be libelous, appeared in person to testify at the trial, in behalf of the defendant can hardly be termed a surprise to the plaintiff.
The Second Substitute Complaint, dated October 11, 1999, terms the defendant's failure to disclose this information a misrepresentation of material fact. While the term "fraud" is not mentioned specifically, the plaintiff claims fraud in his Memorandum of Law in Support of Plaintiff's Objection to Motion to Strike. The plaintiff cites Billington v. Billington,220 Conn. 212, 217 (1991); Kilduff v. Adams, Inc., 219 Conn. 314,329; and Maturo v. Gerard, 196 Conn. 584, 587 (1985). These cases state that the essential elements of an action in common law fraud, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it: and (4) the other party did so act upon that false representation to his injury.
The court has reviewed the previous ruling by this court dated September 22, 1999 (Ripley, J.), wherein the Motion to Strike the plaintiff's First Substitute Complaint was granted. The court in its ruling stated "Please be advised that . . . as to Motion to Strike — it is not sufficient to simply plead conclusions as to the claims of fraud. It is necessary to set out specific underlying facts to support an allegation of fraud. See Maruca v.Phillips, 139 Conn. 79, 90." Maruca v. Phillips, supra, was a case concerning a defendant's continuing duty to disclose certain CT Page 4587 material facts. This court has reviewed Maruca v. Phillips and has arrived at a similar conclusion. As in Maruca, supra, the defendant's claim is without merit. The plaintiff's allegations in the Second Substitute Complaint do not set forth sufficient specific acts to constitute fraud even if viewed in a light most favorable to the plaintiff.
The plaintiff's allegations do not satisfy the criteria of common law fraud as set forth in Billington v. Billington,220 Conn. 212 (1991); Kilduff v. Adams, Inc., 219 Conn. 314, 329; andMaturo v. Gerard.
Accordingly, the defendant's Motion to Strike the Second Substitute Complaint is granted.
III. THE COURT'S POWER TO IMPOSE SANCTIONS
The defendant has further requested that this court enter a Final Judgment dismissing this action with prejudice and renews its requests that sanctions be awarded against the plaintiff. Specifically, the defendant requests the following: (a) sanctions against the plaintiff for commencing and prolonging the present litigation; (b) awarding the defendant, Connecticut Law Tribune, its costs and attorneys' fees incurred in making this motion to strike and motion for sanctions; and (c) enjoining the plaintiff from filing further actions against the defendant without prior permission of the court. The plaintiff has filed its Objection to Sanctions stating that, in order to grant sanctions, the moving party must show clear and convincing evidence that the action was baseless.
Connecticut courts have the inherent authority to impose sanctions for bad faith pleading even in the absence, of a specific rule or order of the court. Fattibene v. Kealey,18 Conn. App. 344, 359-60 (1989).
 "There is ample authority in this state for sanctions against an attorney for violation of a specific rule or order of the court.
 The question is, however, whether the court has inherent authority to impose sanctions against an attorney or his client for a course of claimed dilatory bad faith and harassing litigation conduct where there is no specific rule or order of the court that the plaintiff is claimed to have violated. . . . We conclude that the court has such authority." CT Page 4588
Id. at 360.
Normally, a prevailing litigant is not entitled to attorneys' fees, but the rule does not apply where the opposing party has acted in bad faith. The bad faith exception applies not only to the filing of the litigation, but also in the conduct of the litigation. Roadway Express, Inc. v. Piper, 447 U.S. 752, 766
(1980); Hall v. Cole, 412 U.S. 1, 15 (1973); Fattibene v. Kealey, 18 Conn. App., supra 360.
In order to impose sanctions, the trial court must "make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith; a finding that would have to precede any sanctions under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." Roadway Express, Inc. v. Piper, supra, 766. The court must find "clear evidence" that the challenged actions are "entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes." A high specificity must be stated in the factual findings of the court. Dow Chemical Pacific, Ltd. v. RascatoreIllinois Maritime S.A., 782 F.2d 329, 344 (1986); Weinberger v.Hendrick, 698 F.2d 61, 80 (2d. Cir. 1982).
 "To determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violation of court orders; the appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation. Dow Chemical Pacific Ltd. v. Rascatore Maritime, S.A., supra, 345."
Like any other sanction, attorneys' fees certainly shall not be assessed without fair notice and an opportunity to be heard on the record. Roadway Express, Inc. v. Piper, supra at 767;Connolly v. Connolly, 191 Conn. 468. 475-76 (1983); Fattibene v.Kealey, supra at 353. In the instant action, the Motion to Strike and the Motion for Sanctions were scheduled for the Short Calendar and were argued by the parties on November 15, 1999. The plaintiff had filed his Objection to any sanctions in writing, and also filed a Memorandum of Law stating his opposition to the imposition of any sanctions.
The court finds that by "clear evidence," the plaintiff has engaged in harassing and prolonged litigation in bad faith CT Page 4589 against the defendant. The initial action was commenced in March 1995. On March 27, 1997, the case was presented for trial. The plaintiff was represented by counsel and agreed that prior to the conclusion of the trial, that his action would be dismissed with prejudice. The agreement was recited in open court, on the record. In July 1997, the plaintiff changed his mind and proceeded to file a motion to reopen which was denied on July 22, 1997. The plaintiff then filed a motion to reargue that was denied on August 13, 1997. Thereafter, the plaintiff filed an appeal with the Appellate Court which summarily affirmed the previous court's rulings. Franchi v. American Lawyer Media,51 Conn. App. 903 (1998). Despite this decision by the Appellate Court, the plaintiff filed a "Petition for a New Trial" which was denied on procedural grounds. Thereafter, he commenced the instant action on August 27, 1998. Twice, the court has granted the defendant's Motion to Strike the Complaint and the First Substitute Complaint. The plaintiff then filed a Second Substitute Complaint, which this court in this Memorandum of Decision has ordered stricken. The court has reviewed the record of the initial proceeding in 1997, and the proceedings in this action, and concludes that the plaintiff has acted in bad faith by continuing the instant action, and that his purpose in doing so is to harass the plaintiff and to cause them to incur expense in defending against the plaintiff's allegations. The plaintiff fully availed himself of his rights under our rules of procedure in his first action. He had a full appellate review of the claims which are the basis of the instant case, and the Appellate Court affirmed the rulings of the previous trial court. The defendants have a rightful expectation of finality at this stage of the proceedings. They should not be forced to incur further expense to re-litigate that which has already been decided. This court has every reason to expect that, if sanctions are not imposed, the plaintiff will continue to file additional substitute Amended Complaints in this action without regard to the merits of his action; the costs to the defendants; and the imposition of time, which will be spent by this court in deciding his various requests, which are without merit and border on being frivolous.
Accordingly, the court does award the defendant reasonable attorneys' fees for defending against this motion. The court orders the defendant to present the court with an itemized claim for its attorneys' fees, along with the appropriate affidavits. Upon their receipt by the court, with the appropriate copies to the plaintiff, the court will schedule a hearing within thirty days to determine the amount of attorneys' fees to be awarded to the defendant. At that time, the plaintiff will have an CT Page 4590 opportunity to be heard and to present evidence regarding the amount of attorneys' fees to be awarded to the defendant in accordance with this decision.
IV. CAN THE COURT ENTER A FINAL JUDGMENT UPON THE GRANTING OF AMOTION TO STRIKE?
The defendant has requested that the court, as part of the defendant's request for sanctions, enter an order of final judgment with prejudice and dismiss the plaintiff's instant action. The court has reviewed Practice Book §§ 10-39, 10-40,10-41, 10-42, 10-43 and 10-44 regarding a Motion to Strike andPractice Book §§ 10-30, 10-31, 10-32, 10-33 and 10-34 as they pertain to a Motion to Dismiss.
The court determines that none of these provisions of the Practice Book gives the court the authority to dismiss the plaintiff's action upon the court's granting of the defendant's Motion to Strike the Second Substitute Complaint. The Motion to Strike is not the vehicle to obtain the defendant's goal of dismissing the plaintiff's action at this time.
V. CAN THE COURT ENJOIN THE PLAINTIFF FROM FILING ANY FURTHERACTIONS AGAINST THE DEFENDANT WITHOUT PRIOR PERMISSION OF THECOURT?
The defendant, as part of its request for the imposition of sanctions against the plaintiff, has requested the court to enjoin the plaintiff from filing any further actions against the defendant without prior permission of the court. The defendant, in support of this request, cites In re: Sassower, 20 F.3d 42, 44
(2d Cir. 1994); In re: Martin-Trigona, 9 F.3d 226, 229-30 (2d Cir. 1993); and Safir v. U.S. Lines, Inc., 792 F.2d 19, 23-25 (2d Cir. 1986) cert. denied, 479 U.S. 1099 (1987).
In re: Sassower, supra, involved a litigant who filed frivolous and vexatious judicial misconduct complaints with the Judicial Council of the Second Circuit Court. Chief Judge Newman, in interpreting Rule 19A regarding Abuse of the Complaint Procedure, wrote that Sassower "demonstrates no awareness of the frivolous and vexatious nature of his prior complaints, a circumstance that indicates the likelihood that such abuse of the complaint procedure will continue unless some protective procedures are instituted. In re: Sassower, supra, 44.
 "With respect to civil litigation, courts have recognized CT Page 4591 that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints. Among the restrictions imposed have been prohibiting the filing of any matters in a designated category. Id. at 44; see e.g. Villar v. Crowley Maritime Corp. , 990 F.2d 1869 (5th Cir. 1993).
The court went on in the Sassower decision to state that those who abuse the normal litigation process may be restricted in their opportunity to file new lawsuits by requiring a litigant to receive permission of the court to file new litigation. Id. at 440.
In re: Martin-Trigona, supra, 229, affirms this ability of the court to restrict new filings of a vexatious litigant in discussing certain "leave to file" and "leave of court" requirements.
This court has reviewed these above decisions from the Second Circuit Court and is receptive to imposing similar restrictions on the plaintiff as it regards his filing of legal actions against the subject defendant. However, the court is mindful that, despite its granting of the defendant's Motion to Strike the Second Substitute Complaint and despite the court's granting of attorneys' fees to the defendant in an amount still to be determined, the court has not dismissed the plaintiff's present action, nor has a final judgment been entered. The court will not restrict the plaintiff's ability to respond to the court's rulings of today, by limiting his ability to file further pleadings in this case. However, upon a final conclusion of this matter, the court would entertain further requests from the defendant regarding the restrictions on the plaintiff's ability to file any further action against the defendants which is based upon the facts surrounding the initial allegations presented by the plaintiff in his Complaint bearing docket number CV95 0050279, as well as the instant action. This court cannot limit any rights the defendant may have regarding any future appeal of these orders, issued on this date, March 13, 1999.
Accordingly, the defendant's request to enjoin the plaintiff from filing further actions against the defendant without first obtaining the permission of the court is hereby denied.
The Court CT Page 4592
Arnold, J.