[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The issue before the Court is a motion to strike the third count of the plaintiff's complaint which makes a claim under §42-110b et seq of the general statutes — a so — called CUTPA claim. The plaintiff company performs masonry work. The complaint alleges that the plaintiff entered into an agreement with the defendant construction company that it would perform masonry work for the defendant at a construction project in Derby. The third count goes on to allege the following:
9. Prior to entering into the aforementioned agreement, the plaintiff informed the defendant that the plaintiff was working on other projects. The plaintiff also informed the defendant that CT Page 4823 it would require materials delivered to the jobsite in order to fulfill its obligations to defendant. The plaintiff further informed the defendant that without delivery of these materials, it would be unable to complete construction of other projects.
10. The plaintiff also informed the defendant that it would have to forego other potential jobs in order to enter into the aforementioned agreement with the defendant.
11. In order to induce the plaintiff to enter into the agreement, the defendant represented to the plaintiff that certain construction materials would be delivered to the jobsite in a timely fashion.
12. In reliance on the defendant's representation, the plaintiff refused employment at other jobsites.
13. In reliance on the defendant's representation, the plaintiff entered into the agreement with the defendant.
14. During the course of the job, the defendant failed to supply the construction materials as promised, and the plaintiff's ability to complete the job in a timely fashion was substantially hindered.
15. As a result of the defendant's misrepresentations and the delays occasioned by the misrepresentations, the plaintiff was terminated from at least one other project.
16. As a result of the defendant's actions, plaintiff has suffered an ascertainable loss in the nature of money damages.
The defendant has filed a motion to strike this CUTPA claim arguing that it is not legally sufficient. The standards to apply in addressing a motion to strike are well-known. The complaint must be given that reading that is most favorable to the non-moving party, Amodio v. Cunningham, 182 Conn. 80, 82 (1980).
1.
The defendant contends that the motion should be granted because a simple breach of contract does not offend traditional notions of fairness and thus no violation of CUTPA can be found. The weight of Superior Court decisions supports this position,Chaspek Mfg. Corp. v. Tandet, 1995 WL 447948 (6/16/95), CT Page 4824Aussenhandel v. Great Air Mass. Corp. , 2 CONN. L. RPTR 590; EmleeEquip Leasing Corp. v. Waterbury Transmission Inc., 41 Conn. Sup. 5753 CONN. L. RPTR. 711 (1991), Troxler Elec Labs v. Pallilla,1995 WL 299599, 14 CONN. L. RPTR. 205 (5/10/95), A. Secondino Sons, Inc.v. LD Land Co., 1994 WL 72877S, 13 CONN. L. RPTR. 232, Set to FitRealty v. First Stamford Corp. , 1994 WL 161346, cf NLRB v. M MOldsmobile Inc., 377 F.2d 712, 715 (CA2, 1967) (holding that in context of National Labor Relations Act breach of contract is "not" ipso facto, an unfair labor practice), also seeBoulevard Associates v. Soveriegn Hotels Inc., 72 F.3d 1029,1039 (CA 2, 1995) where court states that a CUTPA claim cannot be made where claim of breach merely sets forth breach without particularizing how or in what respect defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy, also see Bartolomeov. S.B. Thomas, Inc., 889 F.2d 530, 535 (CA 4, 1989), where court construing a North Carolina act similar to our own also concludes that simple contract claim cannot constitute violation of that state's unfair trade practices act.
The burdens on and risks inherent in contract formation would be intolerably increased and simple breach of contract claims would turn into wind falls in every case.
The reasoning behind this rule is well stated by Judge Calabresi at 72 F.3d at page 1039 where he says:
 A rule to the contrary — that a company violates CUTPA whenever it breaks an unprofitable deal — would convert every contract dispute into a CUTPA violation. We cannot assume that the Connecticut legislature, in enacting CUTPA, intended such an extraordinary alteration of the common law
2.
But it is also true that "the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation", Lester v. Resort Campgrounds International Inc.,27 Conn. App. 59, 71 (1992). And the author of Emlee later held that an allegation of a breach of contract can make a legally sufficient CUTPA claim as long as there are "substantial aggravating circumstances". CNF Constructors, Inc. v. CulliganWater Conditioning Co., 8 CSCR 1057 (1993). In CNF Constructors
CT Page 4825 the substantially aggravating circumstances involved "misrepresentations that induced the contract" and the breach itself involved an allegation that "Used materials were suppliedunder the guise of new ones" (emphasis added). The Lester case concerned a situation where the defendant lied to entice the plaintiffs to enter the contract 27 Conn. App. at pp 59, 71-72. Also see Production Equipment Co. v. Blakeslee Arpaia ChapmanInc, 1996 WL 24607S, 15 CONN. L. RPTR. 558.
In this case are there any aggravating circumstances which make this claim more than a simple breach of contract claim and thus either unfair or deceptive under § 42-110b et seq of our statutes?
(a)
Are the allegations sufficient to raise a claim that the defendant was "unfair" in the sense that the actions of the defendant were sufficiently aggravating so as to make this more than a simple breach of contract case. Given the reasons behind the rule of not having simple breach of contract claims qualify under CUTPA, the allegations that the defendant was told that without delivery of the materials in question the plaintiff could not complete other jobs, that it refused other jobs and forgoed the chance to take such jobs cannot suffice. Such claims are no more than the ordinary class of claims that accrue upon any breach of contract action. Courts should be reluctant to turn a simple breach of contract claim into a CUTPA claim merely because substantial damages are alleged especially where the plaintiff is not an individual consumer.
(b)
Were the actions of the defendant "deceptive" under the act — a separate grounds for a CUTPA violation. Here there are allegations of "misrepresentation". The defendant in effect represented he would deliver the materials necessary to do the job — that is comply with a contractual obligation.
It has been held that a "misrepresentation" can constitute an aggravating circumstance that would allow a simple breach of contract claim to be treated as a CUTPA violation; it would in effect be a deceptive act, cf CNF Constructors, Inc. v. CulliganWater Conditioning Co., supra, dicta in Production Equipment Co.v. Blakeslee Arpaia Chapman Inc, et al, supra.
CT Page 4826
In enforcing CUTPA our courts look to the actions of the Federal Trade Commission for guidance. Under federal precedents and CUTPA decisions, a CUTPA plaintiff is not bound by the limitations on the common law action for misrepresentation when making that the basis of his or her claim. Such a plaintiff for example need not prove reliance on the misrepresentation or that the representation became part of the basis for the bargain, WebPress Services Corp. v. New London Motor Inc., 203 Conn. 342, 363
(1987) and knowledge of falsity either constructive or actual need not be shown, Prishwalko v. Bob Thomas Ford Inc,33 Conn. App. 575, 583 (1994), cf Bailey v. Employment System Inc. v.Hahn, 545 F. Sup. 62, 67 (D.Conn. 1982), aff'd 723 F.2d 895 (CA2, 1983). It would also follow that it is not necessary that the seller have an intent to deceiver under the FTIC and CUTPA,Cheshire Mortgage Services Inc. v. Montes, 223 Conn. 80, 106
(1992), see generally Bailey v. Employment System, Inc. v. Hahn,supra.
However, this court has found no case that holds that a statement predictive of future conduct — here performance under a contract — somehow becomes a "misrepresentation" for CUTPA purposes simply when the party making the representation cannot deliver on the promise. This not to say that to be a misrepresentation the representation must relate to an existing or past fact. Even at common law, there were exceptions to such a requirement such as where the representation as to a future fact was coupled with a present intent not to fulfill the promise,Piava v. Vaneck Heights Construction Co, supra or where there has been non-disclosure of facts by a party having a duty to disclose, Egan v. Hudson Nut Products, 142 Conn. 344, 347 (1955). But where these latter factors do not exist, CUTPA liability should not be imposed where the defendant merely has not delivered on a promise (necessarily relating to future performance when made) made at the time the contract was entered into. Otherwise every simple breach of contract claim would constitute a CUTPA violation since in every breach of contract claim the party who is accused of the breach has not performed on a prior representation (i.e. contract commitment) made at the time of contract formation. Connecticut case law implicitly though not explicitly seems to share this view, thus in CNFConstructors the representation found to be a misrepresentation "induced the contract", i.e. it must have been a misrepresentation at the time of contract formation, also seeLester misrepresentation made at time of contract formation to CT Page 4827 induce party to enter into contract.
There is no such allegation here. There is no allegation that the defendant knew or even should have known it could not deliver the materials when it made its representations to that effect or that it failed to disclose facts relative to its ability to do so which in fairness it ought to have disclosed.[1]
The Court in effect adopts the reasoning of Judge Haynsworth in interpreting the North Carolina unfair trade practices act. InUnited Roasters Inc. et al v. Colgate-Palmolive Company,649 F.2d 985, 992 (CA4, 1981) he said:
 In a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the North Carolina legislature must have intended that substantial aggravating circumstances be present. The statute outlaws unfair competition, and the unfair acts and practices made unlawful include acts or practices not apply described as deceptive. The North Carolina Supreme Court in J.C. Penney, in dicta, listed a number of acts or practices thought to be representative of those things proscribed by the statute. They are actually deceptive or approach deception. In each instance, the deception or unfairness was present at the time of contract formation. Those acts or practices were quoted by Judge McMillan in CF Industries, Inc. v. Continental Gas Pipe Line Corp. , 948 F. Sup. 475 (W.D.N.C. 1978), when he adopted a limited construction of the North Carolina statute. He concluded that an intentional breach of a valid contract was not a violation of the statute. Under the jury's resolution of facts, Colgate violation of its contractual obligation was an intentional breach, but there was neither unfairness nor deception in formulation of the contract, and the jury found no deception in the CT Page 4828 circumstances of its breach. The contract here was carefully negotiated and drawn by sophisticated parties. There is no hint of any unfairness to either party before Colgate's cessation of performance. It then broke the contract, but we cannot conclude that unfairness inhered in the circumstances of the breach within the meaning of the statute simply because the breach was intentional and not promptly disclosed.
The motion to strike the Third Count is granted.
CORRADINO, J.